[L. A. No. 1398. Department One.—March 3, 1904.]

# E. T. LANGLEY, Appellant, v. H. C. HEAD, Respondent.

ELECTION CONTEST—BILL OF EXCEPTIONS—DESCRIPTION OF BALLOTS— REFERENCE TO ORIGINALS—RULE OF COURT.—Upon an election contest, in cases where original ballots cannot be reproduced or described in a bill of exceptions so as to show the precise question raised, this court, under rule XXV, will order original ballots to be reproduced; but this rule is not intended to dispense with the description of all disputed ballots in the bill of exceptions, and in cases where the question is such that the condition of the ballots may clearly be exactly shown in the bill of exceptions it devolves upon the person seeking the judgment of this court thereon so to show it; and it is not proper practice in such cases to abandon all description of ballots in the bill of exceptions, and merely to refer to the originals therein.

ID.—OPPORTUNITY FOR INSPECTION OF BALLOTS.—It is the duty of the court to afford to counsel an opportunity for such an inspection of the ballots as may be necessary to properly present the questions raised by the bill of exceptions.

ID.—MARKS NOT DISTINGUISHING BALLOTS.—Pencil-marks on ballots so minute and light that they are not readily observable, and a drop of candle-grease that had fallen on a ballot after it had been voted, and ink-marks on the back of a ballot, and a blot on another, and a tear by election officers cannot serve as distinguishing marks.

ID.—DISTINGUISHING MARKS.—An erasure clearly appearing on the face of a ballot, and two crosses placed after the name of a candidate are distinguishing marks, which require the rejection of ballots containing them.

ID.—OBJECTION NOT MADE.—An objection to ballots not made in the superior court will not be considered upon appeal.

ID.—DISMISSAL OF CONTEST—CONFIRMATION OF ELECTION OF CONTESTEE.
—The dismissal of a contest practically operates to confirm the
election of a contestee who holds the certificate of election.

APPEAL from a judgment of the Superior Court of
Orange County.  J. S. Noyes, Judge presiding.

The facts are stated in the opinion of the court.

J. Howard Bell, A. Y. Wright, and Edwin A. Meserve, for
Appellant.

Victor Montgomery, and Homer G. Ames, for Respondent.

ANGELLOTTI, J.—This is an election contest, involving
the office of district attorney of the county of Orange.  Upon
the canvass of the returns of the general election held No-
vember 4, 1902, the board of supervisors declared H. C. Head
elected to said office.  The contestant, E. T. Langley, who was
the opposing candidate for the office, thereupon instituted
this contest, and upon a recount of the ballots in the superior
court it was determined that Head had received 1,781 votes
and Langley 1,763 votes.

The count having been completed with this result, the con-
testant rested his case, whereupon the contestee moved for a
nonsuit.  The court granted the motion and ordered the action
dismissed, and thereupon judgment of dismissal was entered.

The contestant appeals from said judgment.

The only grounds of contest specified in the statement were,
—1. Illegal votes; and 2. Mistakes of the boards of election
in the counting, tallying, and returning of votes.  Upon the
trial contestant confined his case to a recount of the ballots,
and the only complaint made by him on this appeal is, that
the trial court erred in numerous rulings upon ballots, exclud-
ing many that should have been counted for him, and counting
for the contestee, Head, many that should have been excluded.
The contestee has incorporated in the bill of exceptions his
exceptions to certain rulings of the court in the counting of
the ballots, complaining that the court excluded many ballots
that should have been counted for him, and counted for Lang-
ley many ballots that should have been rejected.

Copies of the disputed ballots are not contained in the bill

of exceptions, and such ballots are made a part of the bill only by the following reference, viz.: "Each and all of the exhibits mentioned in this bill of exceptions are by reference made a part hereof and exhibits hereto." Under an order made by this court, on the application of the contestant, all of the disputed ballots have been forwarded to us for inspection. There are 1,201 of these ballots. It is earnestly contended by contestee that there is no warrant for the production of the original ballots or for the examination thereof by this court, and that copies thereof should have been inserted in the bill of exceptions.

This court has on several occasions ordered that certain original ballots concerning which a dispute existed be produced for inspection by this court on the hearing of the appeal. In these cases it was doubtless recognized that in some instances it was practically impossible to so exactly reproduce the original ballot as to properly show the question presented, and that an inspection of the original was therefore essential to a determination of that question. Rule XXV of this court provides for the inspection of an original paper, where such an inspection is shown to be necessary to a correct decision of the appeal. It was, however, never contemplated that this should lead to a practice that has been adopted in this case,—viz., the abandonment of all attempt to describe the disputed ballots in the bill of exceptions, and the bringing to this court of all of the ballots objected to. Where the question in relation to a ballot is such that the condition of the ballot may clearly be exactly shown in the bill of exceptions, it devolves upon the person seeking the judgment of this court thereon to so show it. Nearly one fourth of the ballots in this case presented the single question as to the effect of the placing of a cross by the voter after the words "No nomination." This question might have been presented by half a dozen lines in the bill of exceptions, and there could not be any necessity for an examination of those ballots by this court. The same is true of the great bulk of the disputed ballots in this case. While the practice here adopted has doubtless lightened the labors of counsel, it has added materially to the labor of this court, and its practical effect has been to convert the court into a canvassing board. It is due to counsel in this case to state, that the record shows that the ballots, imme-

diately upon being counted in court, were again sealed up, and that it is stated by counsel for appellant that they were not thereafter allowed to inspect the same for the purpose of preparing their bill of exceptions. There can be no doubt that opportunity for such an inspection as may be necessary to properly present the questions raised should be afforded counsel in such cases. Waiving all questions as to the right of this court to examine the original ballots, and as to whether it should countenance the practice here followed to the extent of making such an examination, an inspection of those ballots discloses the fact that the appeal is without merit.

Disregarding those ballots which were objected to on the ground that two or more crosses had been made thereon after a candidate's name, which will be hereinafter noticed, we find twelve errors against Langley, and twelve errors against Head. Certain ballots were excluded on the ground that they had on the face thereof pencil-marks, serving as distinguishing marks. Of these, defendant's exhibits 145, 149, 151, 155, 180, 181, and 182, cast for Langley, and plaintiff's exhibits 230, 231, 232, 233, and 234, cast for Head, should have been counted. The alleged pencil-marks on these ballots were so minute and light that they are not readily observable, and could not have served as distinguishing marks. Defendant's exhibits 395 and 618, excluded on the ground of an alleged seal on the back, defendant's exhibit 483, excluded on the ground of blots, and defendant's exhibit 16, excluded on the ground of ink-marks on back, should all have been counted for Langley. The alleged seal on the back of the two ballots was apparently only a drop of candle-grease that had fallen on the ballot after it had been voted, and the ink-marks on the back of one ballot and the blot on the other were such that they could not have served as distinguishing marks.

The objection to plaintiff's exhibit 522, counted for Head, should have been sustained. An erasure was clearly apparent on the face thereof. On the other hand, plaintiff's exhibits 171, 417, and 551, excluded by the trial court, should have been counted for Head. None of these ballots was open to the objection stated in the lower court, and it is well settled that an objection to a ballot will not be considered unless it is first made in the superior court. (*People* v. *Campbell*, 138 Cal. 22.) Plaintiff's exhibits 96 and 187, excluded on the ground

that they were torn, should have been counted for Head.  In each case it was plain that the tear was made by the election officers.  Plaintiff's exhibit 240, excluded on the ground of an erasure on the face of the ballot, should have been counted for Head.  It contained no erasure that we have been able to discover.  The correction of these errors would give each of the candidates eleven additional votes, still leaving Head with a majority of eighteen.  There are ten ballots (plaintiff's exhibits 47, 55, 87, 88, 245, 423, 443, 525, and defendant's exhibits 71 and 390) presenting debatable questions, which we do not deem it necessary to discuss.  Of these, two were Langley ballots, excluded by the court, and three were Head ballots, counted by the court.  The other five were Head ballots that were excluded.  If it be conceded that none of the three Head ballots should have been counted, and that the two Langley ballots should have been counted, it would result in a gain of five votes to Langley, leaving Head with a majority of thirteen.

In all other respects, except in the case of objections to ballots on the ground that the voter had placed two crosses opposite the name of a candidate, the rulings of the trial court were correct.

Under the statute relating to distinguishing marks, as it existed in November, 1902, and the decisions of this court relative thereto, many ballots that were counted by the trial court should have been excluded upon the objection made to the effect that the voter had placed two or more crosses opposite the name of a candidate.  As the legislature at its last session amended the law in this respect (Pol. Code, sec. 1211, Stats. 1903, p. 149), it would serve no useful purpose to here discuss the former decisions of this court relating to this matter. It is sufficient here to say that a careful examination of the ballots objected to on this ground develops the fact that both Langley and Head ballots objected to on this ground were erroneously counted, but that the number so counted for Langley exceeded the number counted for Head.  It also further appears that three Langley ballots (defendant's exhibits 122, 319, and 452) and five Head ballots (plaintiff's exhibits 237, 378, 385, 422, and 426), excluded on this ground, should have been counted.  Deducting from the vote of the respective candidates the ballots which should have been excluded on account of the ''double crosses,'' and adding the

ballots improperly excluded, would still further increase the majority of the contestee.

Upon the showing made in the trial court the contestee was entitled to a judgment confirming his election. (Code Civ. Proc., sec. 1122.) Such is the practical effect in this case of the judgment of dismissal.

The judgment is affirmed.

Shaw, J., and Van Dyke, J., concurred.