[Sac. No. 6483.   In Bank.   Dec. 3, 1954.]

ERNEST SHOEMAKE, Appellant, v. PHYLLIS H. WILSEY et al., Respondents.

Burke & Rawles and John E. Nelson for Appellant.

Mannon & Brazier, Irving M. Brazier and Bronson, Bronson & McKinnon for Respondents.

SCHAUER, J.—Plaintiff appeals from an adverse judgment in his action to recover for personal injuries resulting from an automobile accident. We have concluded that the jury were properly instructed, that the evidence sustains the verdict, and that the judgment should be affirmed.

While plaintiff as a pedestrian was attempting to cross

State Street (a north-south thoroughfare), within a marked crosswalk,[1] from west to east at the intersection with Perkins Street in the city of Ukiah, he was struck by defendant husband's automobile then being driven by defendant wife. She had been traveling from east to west on Perkins Street and at the time of impact had turned left (south) into State Street. She had entered the intersection at a speed of approximately 5 miles an hour, and testified that she did not see plaintiff until she was so close she could not stop before hitting him. The intersection was not controlled by traffic lights or other mechanical device and was free of other traffic at the time.

Plaintiff urges error in instructing the jury on defendants' plea of contributory negligence, contending that there was no evidence of such negligence on plaintiff's part. However, defendant driver testified that when she was some 5 or 6 feet from the crosswalk she saw plaintiff, "and he was running across in front of me." The witness Shepard gave the following testimony: "Q. Did you see the pedestrian? A. I did.

"Q. You saw him as he was hit? A. Yes.

"Q. Did you see him as he left the sidewalk? A. Yes.

"Q. What direction was he moving? A. East.

"Q. East. From the west side of State Street toward the east side of State Street, is that right? A. Yes.

"Q. Was he walking or running? A. As soon as he left the curb."

The same witness testified that he saw plaintiff "run from the sidewalk," that plaintiff "was at a run" when he stepped from the sidewalk, that he did not "see the pedestrian at any time walking in that cross walk," that plaintiff "ran in front of" defendant's car, and that he ran "To the point where he was hit." Plaintiff himself testified that he saw defendant's car as he left the curb and "I had my eye on it then the rest of the time," that when he realized he was going to be hit he "started to run" and had taken two or three running steps before being struck.

It is apparent that the above substantially conflicting evidence is sufficient to support a finding by the jury that plaintiff, without exercising reasonable care for his own

---

[1]We assume for purposes of decision that plaintiff, as testified by him, was attempting to cross within the crosswalk although there was evidence that shortly after the accident he was observed lying in the street "approximately four, five feet, something like that" south of the crosswalk.

safety, ran in front of defendant's automobile and so was guilty of negligence proximately contributing to his injuries.

Other evidence indicating that the witness Shepard may not have seen plaintiff as he left the sidewalk merely creates a conflict which was resolved by the jury in defendant's favor and cannot, upon any theory pertinent here, be considered on appeal. (See *Richter* v. *Walker* (1951), 36 Cal.2d 634, 640 [226 P.2d 593]; *Pfingsten* v. *Westenhaver,* (1952), 39 Cal.2d 12, 19 [244 P.2d 395]; *Holmberg* v. *Marsden* (1952), 39 Cal.2d 592, 596 [248 P.2d 417]; and *Thomas* v. *Hunt Mfg. Corp.* (1954), 42 Cal.2d 734, 736 [269 P.2d 12].) *Gray* v. *Brinkerhoff* (1953), 41 Cal.2d 180 [258 P.2d 834], is clearly not a comparable case. There all of the evidence, devoid of conflict either direct or inferential, was to the effect that the pedestrian entered the marked crosswalk at a time and under circumstances when the defendant's automobile presented no apparent hazard, and that she was crossing with the traffic lights and in a careful manner, whereas here, as stated, there was evidence that plaintiff ran in front of the automobile which was an immediate and perceivable hazard.

Plaintiff also urges that "It is error for the Court to instruct the jury in a pedestrian case that a duty rests upon a pedestrian 'to exercise reasonable care at all times within a marked crosswalk and to continue to be alert to safeguard against injury' without the qualification to this instruction that the injury which must be anticipated must be something that is known to the pedestrian, or must be at least the lawful act of the other party and can not be an instruction to the effect that the pedestrian must anticipate negligence or unlawful acts on the part of another." Plaintiff does not, however, assert that any such instruction as that which he criticizes was actually given nor point out to us at what place in the record such an instruction, if given, might be found. (See rule 15, Rules on Appeal.) We have, nevertheless, read the instructions as a whole and find that the law was fairly stated therein, with respect to the duties and obligations of both pedestrians and drivers.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of affirmance because it appears beyond question from the record that the

issues of negligence and contributory negligence were issues of fact and their determination was within the province of the trier of fact. I can see no real factual distinction between this case and the case of *Gray* v. *Brinkerhoff*, 41 Cal.2d 180 [258 P.2d 834], where the majority of this court held that the issues of both negligence and contributory negligence were issues of law and reversed a judgment for defendant based upon a jury verdict. The attempt of the majority to show a factual distinction between this case and *Gray* v. *Brinkerhoff, supra,* is clearly misleading. The factual difference, if any, is clearly in favor of plaintiff here, because defendant testified that she saw the plaintiff at all times after she commenced making the turn from Perkins Street into State Street where her car struck plaintiff while he was in the crosswalk on State Street. In *Gray* v. *Brinkerhoff, supra,* defendant testified that he did not see plaintiff until after the impact because the traffic was heavy and a post obstructed his view.

It is quite obvious that the only justification for the attempt of the majority to distinguish the Gray case from the case at bar is that the majority does not see fit to decide the factual issues in this case as it did in the Gray case.

There can be no doubt that the majority decision in *Gray* v. *Brinkerhoff, supra,* has created considerable confusion in the law involving accidents at street intersections, as several decisions have already been rendered by District Courts of Appeal attempting to apply the rule of the Gray case, and in each of said cases this court has granted a hearing. (See *Shoemake* v. *Wilsey,* *(Cal.App.) 266 P.2d 807.) As pointed out in my dissenting opinion in *Gray* v. *Brinkerhoff,* 41 Cal. 2d 180, 186 [258 P.2d 834], the only way to rationalize the majority decision in that case is that the majority of this court usurped the function of the trier of fact and determined the issues of fact contrary to the determination reached by the jury and trial court. Otherwise the judgment in that case as well as in the case at bar would have been affirmed.

---

*A hearing was granted by the Supreme Court on April 14, 1954.