[Civ. No. 26957. First Dist., Div. Four. Mar. 29, 1972.]

FRANK J. CURRAN, JR., Plaintiff and Appellant, v.
GREEN HILLS COUNTRY CLUB, Defendant and Respondent.

502

**COUNSEL**

Galligan, Gregorio, Thrasher, Branson & FitzGerald and Dermot J. FitzGerald for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Peder W. Eriksson for Defendant and Respondent.

**OPINION**

**DEVINE, P. J.**—Plaintiff appeals from a judgment on a jury verdict in favor of defendant, Green Hills Country Club, in an action for personal injuries.

*Facts*

Prior to the time of the injury, appellant had been residing at 855 Hacienda Way in Millbrae for approximately two months. He had been an active member of Green Hills Country Club for several years and was familiar with the layout of the golf course, particularly the fifth hole which is immediately adjacent to appellant's residence. Before appellant moved into this home, he himself on many occasions had hit golf balls over the property lines of adjacent homes, including the property now owned by him. At the time the accident occurred, there was a 6-foot high grape stake fence separating appellant's property from respondent's. When appellant purchased the home, he had some reservations concerning its safety. He spoke with members of respondent's board of directors, who assured him that if he purchased the house, a fence would be erected so that he would be protected from golf balls. The protective fence was not in fact built until after the incident which caused appellant's injury. Subsequent to the erection of the fence, a screen 30 feet high, balls which go over the screen usually strike the roof of the house.

After appellant moved into the home, conditions were such that he forbade his family to use the yard and swimming pool until he arrived home at night, which was usually 6 or 7 o'clock. The swimming pool on appellant's property runs generally in a direction parallel to the fence.

From the fence it is possible to see the entire fifth hole, the fourth hole except the tee, and the fairway coming down the third hole. It is not possible to see the third green.

On Saturday, July 9, 1966, at about 5 to 5:30 p.m., appellant was in the back yard with his one-year-old daughter, wading in the pool. Appellant testified that he complied with his customary practice of looking out over his back gate to check if there were any golfers coming. He observed no golfers approaching. The number of golf balls coming on to appellant's property was heaviest during the week end, but on Saturdays there was rarely anyone out after 4 p.m. because on Saturday players start very early. Appellant and his daughter were in the pool approximately 30 minutes when the accident happened. A ball was struck by Mr. Fowler, a member of respondent country club. His drive off the fifth tee was a slicing shot that ended up on the third green. The next shot went over some trees towards the fifth green. Appellant's house was directly in line behind the trees. The ball struck and injured appellant.

### Assumption of Risk

■ Appellant's only claim of error is the giving of an instruction on assumption of risk. The main thrust of his argument is that, while he had general knowledge of the danger caused by errant golf balls, he did not know of the particular danger which caused his injury because he was not aware of the fact that there were golfers on the third hole at the time of the accident.

■ To warrant the application of the doctrine of assumption of risk, the evidence must show that the injured party appreciated the specific danger involved. He must have not only general knowledge of a danger, but also knowledge and appreciation of the particular danger and the magnitude of the risk involved. (*Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777].) ■ There is no evidence that plaintiff had knowledge and appreciation of these necessary factors. There is no evidence that he knew that there were golfers in the vicinity of his home at the time of the accident. If there were no golfers, there would be no danger.

Respondent answers this proposition by saying, first, that when appellant checked to see if anyone was playing, Fowler could have been in the vicinity of that part of the third hole which was outside appellant's view, and the jury could have found that what respondent calls the "so-called precaution" would not relieve appellant from assuming the risk. But if there was negligence in the matter of inspection of the golf course by ap-

pellant, this would fall under the heading of contributory negligence and not of assumption of risk. ██ "[Plaintiff's] failure to exercise ordinary care to discover the danger is not properly a matter of assumption of risk, but of the defense of contributory negligence." (Prosser on Torts (3d ed.) p. 462; *Ward* v. *Knapp,* 134 Cal.App.2d 538 [286 P.2d 370].) The difference is substantial, as pointed out below in the discussion about prejudicial or nonprejudicial error. In the second place, respondent cites *Tavernier* v. *Maes,* 242 Cal.App.2d 532, 543-544 [51 Cal.Rptr. 575], thus: " 'We do not understand the rule to be that threat of injury has to be so great that it was probable. It suffices if it is known to be within the range of possibilities . . . .' " We question the soundness of this expression. It was taken from *Grey* v. *Fibreboard Paper Products Co.,* as the opinion was written in that case by the Court of Appeal and appears in 48 Cal.Rptr. 828, 831-832. But the *Grey* case was taken over by the Supreme Court, so that the opinion of the Court of Appeal became a nullity. (*Ponce* v. *Marr,* 47 Cal.2d 159, 161 [301 P.2d 837].) The Supreme Court, in *Grey* v. *Fibreboard Paper Products Co.,* 65 Cal.2d 240 [53 Cal.Rptr. 545, 418 P.2d 153], affirming the judgment for plaintiff and holding that the error in denying an assumption of risk instruction was not prejudicial, did not use anything like the language of the "within the range of possibilities" character. That language seems to us to be destructive of the accepted rule that the plaintiff must have known and appreciated the magnitude of the risk.

It is true that actual knowledge of the risk and appreciation of its magnitude are subjective requisites which are rarely susceptible of proof by direct evidence. A plaintiff need not be believed by the trier of fact simply because he testified that he did not know or appreciate that which was obvious. ██ But in the case before us, there is no evidence to show that plaintiff must have known that a golfer actually was approaching, nor was there any evidence to contradict plaintiff's to the effect that at the hour when the accident occurred on a Saturday, golfers were rarely to be seen on the course. If plaintiff had testified falsely, impeaching testimony should not have been difficult to produce.

Finally, we remark that the doctrine of assumption of risk should not be applied with liberality, if it be applicable at all, where the injury takes place on plaintiff's own property, which in itself is safe and which is rendered dangerous only by invasion of missiles from adjacent land. Otherwise, the owner of the neighboring property could force the homeowner to remain out of his yard and his swimming pool during hours when it was possible that golfers might hit their shots on to his property. To a limited extent he would be a prisoner within his home. Indeed, if the "within the range of possibilities" proposition were valid and applicable, appellant

would be vulnerable to assumption of risk if he ventured outside his home to the rear facing the golf course, until he had assured himself almost to the point of certainty that the last golfer had gone by. Moreover, if this were the law, there would be no particular reason for the defendant to remedy the situation, unless it were moved by humanitarian reasons, because the rule of assumption of risk would be a continuing one operating for the defendant's protection.

"In general, the plaintiff is not required to surrender a valuable legal right, such as the use of his own property as he sees fit, merely because the defendant's conduct has threatened him with harm if the right is exercised." (Prosser on Torts (3d ed.) § 67, p. 466; see also Rest.2d Torts, § 496 E, p. 576; *Rostant* v. *Borden*, 192 Cal.App.2d 594, 598 [13 Cal.Rptr. 553].)

We conclude that it was error to give the instruction.

### *Prejudicial or Nonprejudicial Error*

■ We conclude that the error was prejudicial. In the first place, the instruction is not merely one of a series on a particular subject. It sets up a whole defense, which, if established, is a perfect one. In the second place, the words "assumption of risk" have about them the suggestion of an easy solution of the case. Finally, the defense of assumption of risk, if sustained by the necessary elements, will bar recovery of damages, although it plays no part in causing the accident except merely to expose the person to danger. (2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 349, p. 1551; Rest.2d Torts, § 496 A, com. d; *Vierra* v. *Fifth Avenue Rental Service*, 60 Cal.2d 266, 271 [32 Cal.Rptr. 193, 383 P.2d 777].) Although the jury was not instructed specifically that proximate causation is not an element of assumption of risk, the jury was of course instructed that negligence of the defendant must, in order to be actionable, be a proximate cause of plaintiff's injuries; and likewise was instructed that contributory negligence must, in order to be a bar, contribute in some degree as a proximate cause of the injury. The omission of the element of proximate cause from the instruction on assumption of risk (an omission quite proper in itself) should strike the jury as showing that the defense of assumption of risk is available to the defendant on lesser terms than is that of contributory negligence. In some cases, the defenses of contributory negligence and assumption of risk may overlap to such an extent that the erroneous giving or omitting of an instruction is not prejudicial. Thus, in the case cited by respondent, *Grey* v. *Fibreboard Paper Products Co.*, 65 Cal.2d 240 [53 Cal.Rptr. 545, 418 P.2d 153], the erroneous refusal to instruct on assumption of risk was not prejudicial where the facts showed very close rela-

tionship between the two defenses, because plaintiff, who was injured while working on a machine, would, if he were guilty of contributory negligence, also almost necessarily have been guilty of assumption of risk. In the case before us, the jury may very well have rendered their decision on the basis of assumption of risk, although they might not have found that plaintiff's conduct merely in going to a certain place on his own property was a proximate *cause* of his injury.

The judgment is reversed.

Rattigan, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.